1

2

3

4

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEC 1 4 2010

5   JASON ERIC SONNTAG                      )
                                            )
6          Plaintiff,                       )     3:09-cv-00637-ECR-VPC
                                            )
7     v.                                    )     **REPORT AND RECOMMENDATION**
                                            )     **OF U.S. MAGISTRATE JUDGE**
8   KENNETH GURRES, ET AL.                  )
                                            )     December 14, 2010
9          Defendants.                      )
                                            )

10

11          This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior

12   United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

13   to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#26).[1]

14   Plaintiff opposed (#36), and defendants replied (#42). The court has thoroughly reviewed the record

15   and recommends that defendants' motion to dismiss (#26) be denied.

16                          **I. HISTORY & PROCEDURAL BACKGROUND**

17          Plaintiff Jason Sonntag ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern

18   Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections

19   ("NDOC") (#12). Plaintiff brought his original action pursuant to 42 U.S.C. § 1983, alleging that

20   prison officials used excessive force against him and failed to protected him in violation of the

21   Eighth Amendment.[2] *Id.* Specifically, plaintiff alleges that defendants Gurres and Carroll brutally

22   attacked him on October 17, 2009, while other defendants assisted in or approved of, ordered, or

23   covered up evidence of the attack. *Id.*

24          Defendants filed a motion to dismiss plaintiff's complaint for failure to exhaust his

25

26          [1]     Refers to the court's docket numbers.

27          [2]     Plaintiff's Eighth Amendment claims are the only remaining claims after screening of his

28   complaint pursuant to 28 U.S.C. § 1915A (#11).

administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative Regulation ("AR") 740 (#26). Defendants claim that plaintiff did not file any grievances regarding the incident on October 17, 2009. *Id.* at 3. Defendants support this conclusion by noting that plaintiff answered "no" to the following question on his civil rights complaint form: "Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures?" (#12, p. 11). The question goes on to state: "If your answer is 'No', [sic] did you not attempt administrative relief because the dispute involved the validity of a: (1) disciplinary hearing; (2) state or federal court decision; (3) state or federal law or regulation; (4) parole board decision; or (5) other." *Id.* Plaintiff checked "state or federal law or regulation" and provided the following note: "This is a civil rights suit."[3] *Id.*

Plaintiff explains that he participated in a disciplinary hearing on October 24, 2009, during which he went "into great detail about the head bashing, macing and assault and battery" (#36, p. 3). He argues further that he "immediately grieved the [hearing] and the assault." *Id.* To support this assertion, plaintiff attaches grievance records to his opposition and states that "[a]ll 3 grievances [were] filed and denied." *Id.* at 4. Specifically, plaintiff attaches informal grievance number 20062886354, dated November 10, 2009, and signed by the grievance coordinator on November 13, 2009. *Id.* at 9. The informal grievance is stamped "received" on November 10, 2009; however, plaintiff did not provide the court a version of the form that includes NDOC's response. *Id.* The informal grievance details plaintiff's hearing difficulties, which he claims prevented him from fully participating in the disciplinary proceeding. *Id.* at 14. Among other details included in the grievance, plaintiff states: "this also constitutes my grievance against C.O. Carroll, Gurries, and

---

[3]     The court notes that "when it is clear from the face of the complaint that a prisoner did not exhaust the administrative remedies, then the court must dismiss the action pursuant to 28 U.S.C. § 1915A." *Valenzuela v. Skolnik*, 2010 WL 4286164 (D. Nev. Oct. 21, 2010) (*citing Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002)). However, plaintiff's claims were not dismissed during screening and the court did not address the issue of exhaustion at that time (#11). Based upon plaintiff's response to the second portion of the question, the court is unsure whether plaintiff understood the question. Further, plaintiff now provides documentation of his efforts to satisfy all three levels of the prison grievance system. Therefore, the court is not convinced that plaintiff's response to these questions demonstrates knowledge that he did not exhaust his remedies prior to filing his complaint.

1   Kelly for assault and battery." *Id.* at 17.   Plaintiff also attaches the first and second level grievances

2   for log number 20062886354, both of which were denied. *Id.* at 30, 32.

3          In their reply, defendants concede that plaintiff filed a grievance related to a disciplinary

4   hearing that occurred on November 5, 2009; however, they state that this "grievance does not grieve

5   the alleged use of force" (#42, p. 3).  Defendants attach to their motion the inmate issue history

6   detailing NDOC's record of grievance number 20062886354 (#26-3, p. 3).  The inmate issue history

7   includes entries for first and second level grievances, but notably does not include a record of an

8   informal grievance.  *Id.*  In fact, defendants do not address plaintiff's informal grievance in their

9   briefing.   The inmate issue history reflects that NDOC received the first level grievance on

10  November 12, 2009, and provided an official response on January 20, 2010.  *Id.*  NDOC received

11  the second level grievance on February 3, 2010, and provided an official response on February 17,

12  2010.  *Id.*  Defendants' final argument is that even if the grievance of the disciplinary hearing could

13  be "construed to address the alleged use of force, it was not filed until November 10, 2009, making

14  it untimely" (#42, p. 3).

15         The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the

16  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the

17  benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.

18  1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A.   Discussion

21         Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional

22  requirement, and defendants bear the burden of raising and proving that the plaintiff has not

23  exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th

24  Cir. 2003), *cert denied*, 540 U.S. 810 (2003).   Inmates are not required to specifically plead or

25  demonstrate exhaustion in their complaints, rather, it is the defendant's responsibility to raise the

26  issue in a responsive pleading. *Jones*, 549 U.S. at 216.

27         Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim,

28  and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119.  The court

1   may look beyond the pleadings and decide disputed issues of fact without converting the motion into

2   one for summary judgment; however, "if the district court concludes that the prisoner has not

3   exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

4   at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see*

5   *also, Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988)

6   ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as

7   such if raised in a motion for summary judgment.").

8       1.      **Prison Litigation Reform Act of 1996**

9       The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with

10   respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

11   confined in any jail, prison, or other correctional facility until such administrative remedies as are

12   available are exhausted." 42 U.S.C. § 1997e(a).

13      Although once within the discretion of the district court, the exhaustion of administrative

14   remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need

15   not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534

16   U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40 n.5. Even when the prisoner seeks remedies

17   not available in the administrative proceedings, notably money damages, exhaustion is still required

18   prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court

19   has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions

20   into statutory exhaustion requirements where Congress has provided otherwise").

21      Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The

22   PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds

23   out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S.

24   81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the

25   PLRA as set forth in *Porter v. Nussle*, 534 U.S. 516, 524-25. *See id.* at 1200.

26      **2.      NDOC Procedures**

27      "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by

28   the prison grievance process itself." *Jones*, 549 U.S. at 218.

4

1    The NDOC grievance procedure is governed by AR 740 (#26-2). Defendants attach to their

2    motion the relevant version of AR 740, which was in effect at the time plaintiff filed his grievance

3    (#26, p. 2 n.2). In order for plaintiff to exhaust available remedies at the time of his injury, AR 740

4    required the following: (1) an informal review level, which "shall be reviewed and responded to by

5    the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal

6    grievance, which "shall be reviewed and responded to by the Warden;" and (3) a second level

7    grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations,

8    Assistant Director of Support Services, Offender Management Administrator, Medical Director, or

9    Correctional Programs Administrator" (#26-2, p. 11).

10    NDOC encourages inmates to resolve grievances informally. *Id.* at 14. Informal grievances

11    must be filed within one of two time frames, depending on the nature of the grievance.

12    > If the issue involves personal property damage or loss, personal injury, medical
   > claims or any other tort claims, including civil rights claims, within six (6) calendar
13    > months.

14    > If the issue involves any other issues within the authority and control of the
   > Department, including, but not limited to, classification, disciplinary, mail and
15    > correspondence, and food, within ten (10) days.

16    *Id.*

17    Once received, NDOC logs informal grievances into a tracking system. *Id.* The caseworker

18    assigned to the grievance will provide the inmate with a response within twenty-five days, unless

19    more time is required to conduct further investigation. *Id.* at 15. For cases in which an inmate

20    alleges staff misconduct, the case is forwarded to the Office of the Inspector General for review and

21    the informal grievance response reflects this action. *Id.* If the inmate is not satisfied by NDOC's

22    response to his informal grievance, he may appeal the decision within five days by filing a first level

23    grievance. *Id.* at 16-17. NDOC will provide a response within twenty days of receipt of the first

24    level grievance. *Id.* at 17. Finally, if the inmate is not satisfied with the first level grievance

25    outcome, he may file a second level grievance, to which the NDOC will respond within twenty days.

26    *Id.* at 17-19. Upon completion of the grievance process, inmates may pursue civil rights litigation

27    in federal court.

28    ///

**B. Analysis**

Defendants argue that plaintiff failed to exhaust his administrative remedies with respect to all claims (#26). Specifically, defendants assert that plaintiff did not ever file a grievance about the alleged use of force by the defendants. *Id.* at 3. They further explain that even if the grievance plaintiff filed about the related disciplinary hearing could be construed as a grievance of the assault, it was not timely because it was filed on November 10, 2009, twenty-four days after the incident (#42, p. 3). Plaintiff argues that he properly exhausted his administrative remedies by filing informal, first, and second level grievances, all of which were denied (#36, p. 4).

The court reviewed the informal grievance plaintiff attached to his opposition and notes that the grievance includes six pages of detail related to a disciplinary hearing, the underlying incident giving rise to the hearing and plaintiff's claims of excessive force, and plaintiff's medical condition. Plaintiff identifies the grievance as an "appeal of disciplinary hearing" in line one of the grievance statement; however, he also states on page five of the additional detail that "this also constitutes my grievance against C.O. Carroll, Gurries, and Kelly for assault and battery." Therefore, the court is not convinced by defendants' statement that plaintiff's grievance solely appeals the disciplinary hearing, as plaintiff clearly states that he also intended to grieve the alleged excessive force.[4] As a result of this conclusion, the court applies the six-month time frame outlined in AR 740 as applicable to "issues involv[ing] . . . personal injury, medical claims or any other tort claims, including civil rights claims." Applying this time frame, plaintiff's grievance of the alleged excessive force was timely, as he appears to have filed the informal grievance only twenty-four days after the incident, which is well within the allowable six-month time frame.

It is unclear from parties' briefing and attachments how plaintiff's informal grievance was resolved. The informal grievance provided by plaintiff is stamped "received" on November 10,

---

[4] The court declines to speculate about whether NDOC allows inmates to grieve multiple issues on one grievance form since defendants do not raise this concern, nor do they suggest that plaintiff's grievance suffered from this particular procedural deficiency. Similarly, the court notes that plaintiff's informal and formal grievances appear to have been received by NDOC on the same day or only one day apart. Again, however, defendants do not raise this issue as an example of a procedural deficiency in their briefing, attachments, or responses to plaintiff's first and second level grievances. Therefore, the court is unwilling to assume this is the cause of plaintiff's failure to exhaust.

1   2009, and the grievance coordinator signed the form indicating its receipt on November 13, 2009.

2   However, the informal grievance is not included in the NOTIS report provided by defendants, nor

3   does plaintiff provide a copy of the informal grievance that includes NDOC's response. What is

4   evident from parties' exhibits is that plaintiff successfully filed a first level grievance, attaching the

5   same six pages of detail he claims to have attached to his informal level grievance. NDOC denied

6   this grievance and plaintiff subsequently filed a second level grievance, which was also denied.

7   Plaintiff also includes a memorandum from Warden Benedetti regarding the appeal of his

8   disciplinary hearing stating that "[b]ased on [plaintiff's] claim of excessive force, this matter will

9   be forwarded on for further review in accordance with AR70." While the outcome of this

10  supplemental investigation is not relevant to the instant issue, the court notes this exhibit merely to

11  suggest that plaintiff appears to have raised the issue of excessive force in the appeal process.[5]

12         Based on the facts before the court, defendants have not met their burden of proving that

13  plaintiff has not exhausted his remedies. Plaintiff provides copies of his grievances, which include

14  complaints about excessive force. While the court is unclear as to how NDOC resolved the informal

15  level grievance, the court declines to assume on defendants' behalf that plaintiff's informal grievance

16  was procedurally infirm. The court is particularly reluctant to draw this conclusion as NDOC

17  addressed first and second level grievances, which included details about the alleged assault, without

18  noting any procedural deficiencies in the informal grievance. Therefore, defendants' motion to

19  dismiss plaintiff's claims for failure to exhaust is denied.

20                                    **III. CONCLUSION**

21         Based on the foregoing and for good cause appearing, the court concludes that defendants

22  did not meet their burden of proving that plaintiff failed to exhaust his administrative remedies.

23  Therefore, the court recommends that summary judgment for the defendants be **DENIED**. The

24  parties are advised:

25         1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

26

27         [5]     It is unclear from the briefing and attachments whether the appeal process referenced in the

28  memorandum is part of the grievance process, as plaintiff and NDOC both refer to plaintiff's grievance as
    an "appeal."

1   the parties may file specific written objections to this report and recommendation within fourteen

2   days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

3   Recommendation" and should be accompanied by points and authorities for consideration by the

4   District Court.

5          2.     This report and recommendation is not an appealable order and any notice of appeal

6   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

7                              **IV.  RECOMMENDATION**

8          **IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#26) be

9   **DENIED**.

10          **DATED**: December 14, 2010.

11

12                                              _____
                                                **UNITED STATES MAGISTRATE JUDGE**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28